UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANA EASTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00981-TWP-CSW |
| | ) |
| REID HOSPITAL & HEALTH CARE SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Reid Hospital & Health Care Services, Inc.'s ("Reid Health") Motion for Summary Judgment (Filing No. 59). Following Plaintiff Diana Eastman's ("Eastman") termination from Reid Health, she initiated this action alleging violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). For the following reasons, summary judgment is **granted**.

## I.     BACKGROUND

The facts stated below are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Eastman as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Eastman began her employment at Reid Health in August 2017 as a PRN Medical Technologist making $27.95 per hour (Filing No. 60-1). Six months later, she was promoted to Lab Manager at an annual salary of $70,000.00. *Id*. In her role as Lab Manager, Eastman reported to Charles McGill, Director of Laboratory Services, who reported to Vice President, Angela Dickman ("Dickman"). In March 2018, after dealing with stress related to a challenging program

change at work, Eastman began experiencing frequent migraines. She reported a recent diagnosis for post-traumatic stress disorder, attention deficit hyperactivity disorder, and "intermittent struggles with depression and anxiety disorder" (Filing No. 60-2 at 25). Eastman did not hide her health conditions from anyone at Reid Health and she spoke with several individuals in management and human resources about the challenges she was facing (Filing No. 60-2). After discussing her struggles, Dickman worked with Eastman to get her into the Employee Assistance Program ("EAP") designed to help employees with disabilities manage their workloads through counseling sessions. *Id.*

Challenges aside, in October 2020, Dickman recommended that Eastman be promoted to Director of Laboratory Services, and Eastman was promoted. (Filing No. 60-1). As Director of Laboratory Services, Eastman now reported directly to Dickman. *Id.* To help her succeed in her new role, Dickman required that Eastman meet with a leadership development coach, and Dickman also "met with Eastman daily to provide support, training, and feedback." (Filing No. 61 at 4; Filing No. 60-1 at 4, ¶ 19; Filing No. 60-3 at 3, ¶ 4.)) Eastman began her director position with a starting salary of $105,000.00 and approximately three months later, her salary was increased to $108,150.00. (Filing No. 61 at 3.)

Although Eastman never received any formal discipline while she worked for Reid Health, (Filing No. 68-1 at 23), she faced difficulties in her new position. Eastman's subordinates complained to Dickman and Human Resources about her management style and communication techniques. (Filing No. 60-1 at 4.) The relationship between Eastman and her subordinates had broken down so irretrievably that several resigned or were threatening to resign citing Eastman as their reason for leaving or wanting to leave. (Filing No. 60-3 at 3.) Eastman reportedly struggled with managerial tasks such as posting the work schedule for employees in a timely fashion. For

example, when Eastman's lead tech struggled to get scheduling completed timely, Eastman failed to train and counsel her and contrary to Dickman's counselling, Eastman simply took over the task herself.  (Filing No. 60-3 at 3.)

Despite counseling, Dickman felt that Eastman's performance did not improve (Filing No. 60-1, 60-3).  One weekend Eastman brought her minor child into work on her day off--with an explanation believed to be untruthful --and a co-worker reported that Eastman "permitted her to run around and be disruptive".  (Filing No. 60-3 at 3.)  In April 2021, Eastman failed to post the schedule for hundreds of lab employees until less than 12 hours before some individuals' shifts would be starting.  It required multiple follow-ups by Dickman to get the schedule posted.  *Id*.; (Filing No. 61 at 4).  Eastman explained that she delegated the task of scheduling to another employee who had previously handled scheduling (Filing No. 68-2 at 1, ¶ 3).  On April 18, 2021, due to Eastman's poor performance in her new role, Dickman recommended to Human Resources that Eastman be terminated (Filing No. 60-1 at 5).  Eastman was then terminated by Reid Health on April 19, 2021.  *Id.*  At the time of her termination, Eastman was also "under investigation by Reid [Health]'s Corporate Compliance for failure to appropriately and fully validate lab equipment" (Filing No. 60-3 at 4).  Eastman complied fully with the investigation.

As Eastman was packing up her office to leave, Carrie Kolentus, Reid Health's Vice President and Chief Human Resources Officer, stated that Eastman "should consider [her termination] a gift because she knew that [Eastman] was struggling with migraines, and it was painful."  (Filing No. 68-1 at 35.)  On several occasions, Dickman stated her concern that job stress was exacerbating Eastman's migraine headaches.  *Id*. at 37.  After her separation, when Dickman had coffee with Eastman, Dickman mentioned that "she knew it had to be a struggle to deal with the pain," referring to Eastman's migraines.  *Id*. at 36.

3

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante* at 584. "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted). Additionally, the Court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes. *Id.* (citation and quotation marks omitted); *see Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021).

### III.  DISCUSSION

Eastman initiated this action alleging Reid Health unlawfully discriminated against her due to her sex and disability.[1] Reid Health seeks summary judgment on Eastman's ADA and Title VII claims, asserting Eastman cannot establish a *prima facie* case under either claim, because she did not meet legitimate expectations and cannot prove similarly situated employees outside of her protected class were treated more favorably. Reid Health also asserts some of Eastman's evidence should be disregarded as inadmissible when ruling on the motion for summary judgment. The Court will first address the evidentiary issues before turning to the substantive claims.

**A.    Evidentiary Issues**

Reid Health objects to Eastman's affidavit and supporting exhibits, and her proposed "Additional Material Facts Not in Dispute" No. 4 (Filing No. 77 at 4). If the Court were to consider the evidence and agree that it creates a genuine issue of material fact, this evidence would indeed bolster both Eastman's ADA and Title VII claim. So, the Court must first determine whether this evidence is admissible.

Reid Health argues that Eastman's affidavit filed on August 18, 2023, (Filing No. 68-2), is contradictory to her April 21, 2023 sworn deposition testimony (Filing No. 68-1). A party may not create issues of fact by submitting an affidavit that contradicts prior deposition or other sworn testimony absent newly discovered evidence. *Russell v. Acme-Evans Co.*, 51 F.3d 64. 67-68 (7th Cir. 1995). Throughout Eastman's deposition, she describes conversations with Reid Health staff

---

[1] In her response brief, Eastman withdrew her claim, as contained in paragraphs 20-21 of her Complaint, that Reid Health discriminated against her in pay due to her sex. (Filing No. 69 at 1, fn 1.)

informing her of disgruntled and unsatisfied employees that were leaving due to her management style (Filing No. 60-2). However, in her affidavit, she reports receiving no notification of subordinates leaving because of her leadership (Filing No. 68-2). The Court properly notes this contradiction, sustains the objection, and will only consider the portions of Eastman's affidavit that do not contradict her sworn deposition testimony.

Next, Reid Health objects to the Reid Health Leadership Performance Evaluations, attached to Eastman's Affidavit as "Exhibit A", (Filing No. 68-2 at 3-19), arguing lack of authentication. Although the document is not self-authenticating under Federal Rule of Evidence 901, the Court agrees with Eastman – this document can be authenticated through her personal knowledge. Fed. R. Evid. 901(b)(1). Eastman was an employee of Reid Health at the time of her performance evaluations and had the opportunity to review the evaluations. Personal knowledge can be reasonably inferred from these facts. The Court overrules Reid Health's objection and will consider the performance evaluations in its decision.

Reid Health also objects to "Exhibit B" attached to Eastman's Affidavit — screenshots of a string of text messages (Filing No. 68-2 at 20-47) — arguing inadmissible hearsay, lack of personal knowledge and lack of authentication. Hearsay is an out-of-court statement, admitted for the truth of the matter asserted. *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004). The several text messages between Eastman and Reid Health employees text messages contain hearsay within hearsay. *See* Fed. R. Evid. 805. First, the screenshots themselves are hearsay. Second, the messages within the screenshots also contain multiple levels of hearsay. Eastman attempts to use Federal Rule of Evidence 803(5), recorded recollection, as an exception to the hearsay rule; however, recorded recollection does not apply here.

6

The text messages could be admitted if it was "(a) on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (b) was made or adopted by the witness when the matter was fresh in the witness's memory; and (c) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). Only the text messages sent by Eastman would potentially meet this exception. Any text message sent by a Reid Health employee could not be adopted by Eastman, nor would she have personal knowledge of the situations discussed within. Accordingly, the Court will disregard the text messages provided by Eastman. Still, the Court will discuss why the text messages – even if they were to be considered – do not save Eastman's claims from summary judgment.

Lastly, Reid Health objects to Eastman's proposed Additional Material Fact No. 4 (Filing No. 77). Eastman alleges that co-workers Matt Bellew and Linda Rutherford "had the same or worse employee evaluations as her." (Filing No. 69 at 6.) Reid Health contends this information is based on hearsay and Eastman has not submitted any evidence to support these allegations. (Filing No. 77 at 4-5.) Eastman fails to respond to this objection in her sur-reply (Filing No. 78). The Court agrees that this statement is inadmissible. Eastman did not designate performance reviews for Matt Bellew or Linda Rutherford. In addition, Eastman was not a supervisor of Matt Bellew or Linda Rutherford and therefore would have no personal knowledge of their evaluations absent communication from a third-party. As such, the Court sustains Reid Health's objection and will disregard this statement in determining whether to grant or deny summary judgment.

**B.      Discrimination Claim under the ADA**

Under the ADA, an employer is prohibited from discriminating against a "qualified individual" based on a disability. 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination in employment, Eastman must prove (1) she is disabled within the

7

meaning of the ADA; (2) her work performance met the employer's legitimate expectations; (3) she was discharged; and (4) "the circumstances surrounding the discharge indicate it is more likely than not that [her] disability was the reason for the discharge." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 626 (7th Cir. 2001); *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1256 (Ind. 2002). Moreover, for a discriminatory discharge claim under the ADA, a plaintiff must also prove that their employer would not have terminated them "but for" their actual or perceived disability; proof of mixed motives is inadequate. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962–63 (7th Cir. 2010); *see also McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 (7th Cir. 2020).

The ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities of an individual; a record of such impairment; or being regarded as having such an impairment. 42 U.S.C. § 12102(2). For purposes of this motion, Reid Health assumes Eastman can demonstrate that she is disabled within the meaning of the ADA (Filing No. 61), and the Court concludes that Eastman has established the first element of a *prima facie* case of disability discrimination. In addition, Eastman has demonstrated—and Reid Health does not dispute—that her employment was terminated on April 19, 2021. Thus, Eastman has also met the third element of a *prima facie* case of disability discrimination that she was discharged.

Reid Health argues persuasively that the designated evidence demonstrates Eastman did not meet Reid Health's legitimate expectations. To meet the second element, Eastman must establish that she was "performing her job to the satisfaction of Reid Health *at the time of termination*." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002) (emphasis added). Reid Health contends Eastman was not meeting legitimate expectations for several reasons (Filing No. 61). First, the designated evidence shows that Eastman did not maintain good relationships with her subordinates causing several to resign or threaten to resign (Filing No. 60-1

8

at 4; Filing No. 60-3 at 3). Several subordinates complained to human resources about her management style noting significant delays in scheduling and a need for better communication. These claims are even supported by the performance reviews Eastman designated into evidence (Filing No. 68-2 at 3-19). Eastman's last performance review reports the overall morale of employees who reported to Eastman were low, presenting multiple concerns. *Id.* at 16-19. Second, Eastman failed to follow workplace policies, allowing her minor child to enter the lab with her during her day off (Filing No. 60-3 at 3). Third, Eastman was under investigation by Reid Health's Corporate Compliance for failing to validate new lab equipment (Filing No. 60-3 at 4). This designated evidence supports that Eastman's work performance did not meet her employer's legitimate expectations.

Explains that she had no choice but to bring her child to work, but she does not dispute that bringing her child into the lab was against policy. She argues that she had a long history of outstanding performance, and Reid Health's proffered reasons make it more likely than not that her disability was the reason for her discharge. (Filing No. 69 at 10.) Eastman is correct that in 2018 and 2019, she received high ratings in her performance evaluations, but she was not disciplined or terminated until her performance began to decline after she entered the position of Director of Laboratory Services in October 2020.

Reid Health argues the circumstances surrounding Eastman's termination indicate that her disability was not the reason for her discharge. Reid Health was made aware of Eastman's disability in 2018 yet still gave Eastman constant raises and promotions (Filing No. 60-1). Knowledge of Eastman's disability did not affect Eastman's success in the company. Eastman has not established that she was meeting Reid Health's legitimate expectations at the time of her

9

termination, and therefore cannot fulfill the second prong of a *prima facie* case for a disability discrimination claim.

Lastly, Reid Health argues Eastman has failed to identify any similarly situated, non-disabled director who was treated more favorably (Filing No. 61 at 10). An employee is similarly situated for purposes of discrimination claims when the employee "(1) had the same job description, (2) were subject to the same standards, (3) were subject to the same supervisor, and (4) had comparable experience, education, and other qualifications." *Boumehdi v. Plastag Holdings*, LLC, 489 F.3d 781, 791 (7th Cir. 2007).

Eastman contends that non-disabled employees Matt Bellew, Linda Rutherford, Radonna Winters, and Dorian Choice, were all employees who had disgruntled employees voice concerns against them, yet they were not terminated (Filing No. 69 at 14). But none of the four individuals Eastman points to are similarly situated to her. First none of the employees Eastman references reported to her same supervisor, Dickman (Filing No. 68-1). The employees referenced all reported to Eastman and any disciplinary measures would have come from Eastman herself. *Id*. Second, the individuals Eastman references were all managers, none were directors like Eastman. *Id*. As such, they cannot be considered similarly situated to Eastman. *See Milloy v. WBBM-TV, Chicago*, 613 F. Supp. 2d 1035, 1037 (N.D. Ill. 2009). In *Milloy*, the proposed comparator was concededly not Milloy's subordinate, or his peer. The court noted that those differences in status have consistently been held to negate the "similarly situated" test applicable to the essential fourth element of a prima facie case—as to managerial vs. non-managerial employees, see, e.g., *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1042 (7th Cir.1993)

Finally, due to the difference in their positions, each employee referenced had different job duties/expectations. For example, Linda Rutherford was a microbiology manager and managed

10

only six people, unlike Eastman. *Id.*; *but see Boumehdi*, 489 F.3d at 791 (holding two employees who reported to the same supervisor, worked the same shift, and produced the same output were similarly situated employees despite not having the exact same title). A reasonable jury could not find, based on Eastman's evidence, that she, Matt Bellew, Linda Rutherford, Radonna Winters, and Dorian Choice were similarly situated.

The designated evidence does not support Eastman's allegation that she was discriminated against or terminated because of her disability. The Court **grants** Reid Health's Motion for Summary Judgment on Eastman's ADA claim.

C.  **Gender Discrimination Claim under Title VII**

Eastman also claims that her termination was due to gender discrimination. Title VII of the Civil Rights Act of 1964 provides that, "[i]t shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, … or national origin." 42 U.S.C. § 2000e-2(a)(1). Eastman contends that Reid Health discriminated against her based upon her female gender, and similarly situated male employees were treated more favorably and were not terminated for their poor performance.

Eastman can prove discrimination under Title VII by using either the direct method, by proffering direct or circumstantial evidence that sex discrimination motivated the pay decisions, or the indirect, burden-shifting method. *See Darchak v. City of Chi. Bd. Of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009); *Velez v. City of Chi.*, 442 F.3d 1043, 1049 (7th Cir. 2006). But regardless of the method, the issue in a discrimination case is whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race, national origin, or other protected class caused the termination or other adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765

(7th Cir. 2016). The evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Id.*

Eastman has not designated any direct or circumstantial evidence of discrimination. Although not explicitly stated, her discussion suggests she has decided not to explore the direct method. Instead, Eastman proceeds under the indirect method of proving discrimination. Under this approach, she utilizes the burden-shifting framework outlined in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). She must first establish a *prima facie* case of discrimination on the basis of sex. *Crim v. Bd. of Educ. Of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir. 1998).

Establishing a *prima facie* case under Title VII is very similar to establishing discrimination under ADA. Eastman must present evidence that tends to show she is a member of a protected class; she was meeting Reid Health's legitimate performance expectations; she suffered an adverse employment action; and she was treated less favorably than similarly situated male employees. *Whittaker v. Northern Illinois University*, 424 F.3d 640, 648 (7th Cir. 2005). If Eastman can establish those four elements, the burden shifts to Reid Health to provide a legitimate, non-discriminatory reason for Eastman's termination. *Farr v. St. Francis Hosp. and Health Ctrs.*, 570 F.3d 829, 833 (7th Cir. 2009). If Reid Health provides a non-discriminatory reason, the burden shifts back to Eastman to show Reid Health's excuse was pretextual. *Id.* It is this part of the test that Eastman believes is ultimately at issue in this case. To be pretextual, Reid Health's proffered excuse must be a lie. *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 754 (7th Cir. 2006).

Eastman has established, and Reid Health does not dispute, that she is female and a member of a protected class. Eastman presented undisputed evidence that she suffered adverse employment action – her termination. However, the parties dispute whether Eastman's

12

performance was satisfactory, and Reid Health argues that Eastman cannot show that any similarly situated male was treated more favorably.

As noted in the ADA claim analysis, Eastman has not demonstrated that she was meeting Reid Health's legitimate expectations – she failed to submit schedules in a timely fashion; she lacked good relationships with subordinates; and she violated workplace policies by bringing her minor child to work without permission (Filing No. 60-3 at 3). Eastman did not designate any evidence that raises a genuine dispute of material fact on this issue. Her self-serving statements that she was an excellent employee, supposedly justified by the 2018-2019 performance reviews, are insufficient to create a factual issue on summary judgment. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995). As noted earlier, the later performance reviews submitted do not support this assertion fully; instead, they reflect key service behaviors that Eastman did not meet (Filing No. 68-2 at 3-19).

Eastman has also failed to demonstrate that a similarly situated male employee was treated more favorably than her. Her argument that that Lab Manager, Matt Bellew (male), was treated more favorably than her fails for multiple reasons. First, Matt Bellew was in a lower-ranked position than Eastman. At the time she alleges favor, Matt Bellew was a Lab Manager, whereas Eastman was Director of Laboratory Services. Matt Bellew also reported to a different supervisor; he did not report to Dickman during his time as a Lab Manager. Additionally, Eastman admits that Matt Bellew, who also received complaints from disgruntled employees, "decided to resign before the situations got progressed." (Filing No. 68-1 at 64.) This admission shows that Eastman believed Matt Bellew would have also been terminated for his poor evaluations had he stayed. Additionally, because he resigned in 2018 and Eastman was not terminated until April 2021, their situations cannot be remotely compared. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676,

13

680 (7th Cir. 2002). Eastman has not presented a similarly situated male who was treated more favorably; thus, she has failed to establish a *prima facie* case of gender discrimination.

Even if she had established a *prima facie* case, Eastman fails to establish pretext. To show the proffered reason is pretext, Eastman must demonstrate that (1) the defendant was more likely than not motivated by a discriminatory reason; or (2) the defendant's stated reason was not credible. *Torrence v. Milestone Contractors, LP*, 453 F.Supp.3d 1137, 1150 (2020). At the summary judgment stage, the court need only decide if the evidence provided could lead a reasonable jury to infer the reasons taken for the adverse action were lies. *Id.* at 1151. A pretext analysis evaluates the honesty of the evidence presented, not its reasonableness. *Seymour-Reed v. Forest Pres. Dist. Of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018).

To show pretext, Eastman disputes that she failed to meet expectations based on her performance reviews. The performance reviews designated by Eastman are from January 2021, December 2019, and June 2018 (Filing No. 68-2 at 3-19). Eastman was not placed into her new role, Directory of Laboratory Services, until October 2020, making the performance reviews from June 2018 and December 2019 irrelevant. Reid Health does not dispute that Eastman did good work prior to her position as a Director of Laboratory Services; it specifically argues that "[ ] Eastman struggled in her *new* position." (Filing No. 61 at 4) (emphasis added). Nonetheless, when reviewing the performance reviews, they show increasing concerns regarding team morale. (*See* Filing No. 68-2 at 3-19) (noting in 2018 there was no cause for concern, in 2019 there were minimal concerns, and in 2020 there were multiple concerns relating to overall morale of the departments reporting to Eastman).

Eastman contends that she was not made aware of these concerns in her performance reviews and received no disciplinary actions prior to being terminated (Filing No. 69 at 10). She

submits text messages to establish she did not receive notice of employee complaints prior to her termination (Filing No. 68-2 at 20-47; Filing No. 78 at 5-6). But Reid Health's failure to communicate their concerns by way of performance review, or text, is not enough to presume their proffered reasons were lies. *See Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 157 (7thh Cir. 1994) (noting a bad business judgment on behalf of a decisionmaker is not enough to establish pretext). Additionally, although Reid Health may not have communicated employee concerns in her performance review, Eastman admits she was made aware that "several of the lab employees" were talking about writing letters to human resources "to try to get [her] fired" while still working for Reid Health (Filing No. 66-1 at 27). This admission supports one of Reid Health's proffered reason for termination – poor employee relations.

Eastman has not demonstrated that her termination was more likely than not motivated by a discriminatory reason—her female gender, or that Reid Health's stated reason was pretextual and not credible. Instead, the designated evidence shows that its proffered reason for Eastman's termination was its actual and honest reason. Viewing the evidence and all reasonable inferences in Eastman's favor, she has not designated any evidence that suggests Dickman, as the final-decision maker, did not honestly believe her reasons for terminating Eastman's employment Therefore, summary judgment is **granted** in favor of Reid Health on this Title VII claim.

## IV. CONCLUSION

For the reasons explained above, Reid Health's Motion for Summary Judgment (Filing No. 59) is **GRANTED** as to all claims. Final judgment will issue under separate order.

SO ORDERED.

Date: 12/19/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Paul Anthony Logan
JOHN H. HASKIN & ASSOCIATES, LLC
plogan@jhaskinlaw.com

Alexander Phillip Will
FROST BROWN TODD LLP
awill@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLP
hwilson@fbtlaw.com